## Case No. 15,159.

### UNITED STATES v. FRANK.

[2 Biss. 263; [1] 3 N. B. R. 175 (Quarto); 17 Pittsb. Law J. 140; 2 Chi. Leg. News, 236.]

District Court, N. D. Illinois. April, 1870.

BANKRUPTCY — INDICTMENT FOR FRAUDULENTLY OBTAINING CREDIT.

1. The forty-fourth section of the bankrupt act [of 1867 (14 Stat. 539)] construed.

2. A man who, while carrying on a retail trade, buys large quantities of goods and ships them under the pretense of needing them in his regular business. but ships them off and sells them at wholesale at a sacrifice, is guilty under the act.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

In bankruptcy. This was an indictment found under the following clause of the bankrupt law: "If any debtor," etc., "shall within three months before the commencement of proceedings in bankruptcy, under the false color and pretense of carrying on business, and dealing in the ordinary course of trade, obtain on credit from any person any goods and chattels, with intent to defraud," etc., "he shall be deemed guilty of a misdemeanor, and, upon conviction thereof in any court of the United States, shall be punished by imprisonment, with or without hard labor, for a term not exceeding three years."

J. O. Glover, U. S. Dist. Atty.
Silver & Willard, for defendant.

BLODGETT, District Judge. Gentlemen of the jury: To constitute the offense, the accused must (1) obtain goods and chattels from some person or persons, on credit, under the false pretense of carrying on business and dealing in the ordinary course of trade; (2) such credit must be obtained within three months from the commencement of proceedings in bankruptcy; (3) such goods and chattels must be obtained on credit, as aforesaid, with intent to defraud.

The obvious purpose of this statute is to prevent a person from obtaining goods on credit, with the expectation on the part of those who give the credit that they will be disposed of in the ordinary course of business, when, in fact, he intends to dispose of such goods in some extraordinary or unusual manner, or knows that he is insolvent, and that the goods would go into the hands of his assignee in bankruptcy, and be disposed of for the benefit of his creditors generally, and not in the usual course of trade. It was to prevent men from abusing their credit, and imposing, by means of it, upon others, that this act was passed to compel, as far as law will do it. the observance of good faith in commercial transactions between business men.

In this case it seems from the evidence, and may be taken as undisputed, that during the latter part of 1866, and until the 6th of January, 1868, the firm of E. Frank & Bro. was engaged in business as retail dealers in boots and shoes at Springfield in this state, and that the defendant was the active, and so far as the evidence in this case goes, would seem to have been the principal member of the firm. About the 16th of October, 1867, the defendant appears, from the evidence, to have been in this city, and to have purchased on credit of from thirty to ninety days, from the several firms named in the indictment, quite considerable bills of merchandise, mainly in the direct line of his business, and with the statement that such goods were to be used for resale in his business at Springfield. stating to some that he expected to open another store at Alton, in

this state. While making these purchases he made representations as to his financial condition, showing that, if true, he was then fully worthy of the credit he asked. And the witnesses testify that these goods were obtained upon the faith they placed in these representations, and with the belief and expectation that the goods so sold him would be retailed in due course of business at the store of said firm; that on the faith of these representations then made he continued to obtain still further bills of goods up to the 18th of December, 1867, the last bill amounting to $468.91, being ordered on that day from Hardenburg & Page, of this city, and shipped to him pursuant to such order.

It also appears in proof that on the 5th of October. 1867, defendant commenced shipping the goods from his store in Springfield, by express, to St. Louis, directing them in cypher, such shipments amounting to over seventy packages. And that on the 6th of January, 1868, the defendant applied to the United States district court for the Southern district of this state, for the benefit of the bankrupt act, rendering a meagre schedule of assets, and a much larger schedule of liabilities than he had represented at the time he had obtained the goods on credit; that Emil Frank, one of the members of the firm, could not be found, and had probably absconded about the time of the application for the benefit of the bankrupt act.

These are the main features of the case on the part of the prosecution.

There seems no dispute that the goods were obtained on credit under the pretense that the defendant was carrying on business in the ordinary way, and that these goods were to be used in the ordinary course of business —that is, for retail purposes from the store of E. Frank & Bro. The main question now is, were these pretenses false, and did defendant at the time he obtained these goods, or any of them, on credit, intend to use them in some different manner from that of his ordinary and apparent course of trade.

Usually we can only ascertain a man's intentions from his acts. Criminal intentions are not as a rule divulged except as they are to be inferred from the conduct of the parties, and developed thereby. There is no positive evidence showing the time when the idea of obtaining these goods from the firms in Chicago, for the avowed purpose of selling them at retail in his store at Springfield and in violation of that faith, shipping them off to St. Louis and selling them at wholesale was conceived. But from the circumstances surrounding the whole transaction, you are to infer what his probable intent and purpose was at the time he obtained the goods. In examining these circumstances you will properly note the short time that elapsed between the obtaining of the goods and the shipment of a large part of defendant's stock in trade to St. Louis to be disposed of in an extraordinary manner. The fact that this process of shipment was going on at the time, part of the goods were ordered and obtained, is evident, one lot of goods having been ordered on the 17th or 18th of December, when he was daily shipping his goods away by express.

The fact that he made false and conflicting statements to his creditors, as to his financial condition when he obtained the goods (if you shall believe them false from the evidence,) is also an important circumstance tending to show fraudulent intent. You will remember that in making statements of his means, he stated to some firms that he was worth $18,000, over and above all debts, and to others that he was worth $20,000, and did not owe a cent, and to others that he was worth $15,000, over all his debts; and that these creditors were put off by false pretexts when they personally visited him to investigate his affairs. Any subterfuges or acts resorted to, to keep creditors quiet while this process of depleting his stock was going on, are circumstances which you can consider, and from which, if cogent enough in your minds, you may infer an intent to defraud, reaching back to the time when the goods were obtained.

But you must at the same time be careful not to presume criminal intent, or an intent to defraud, without evidence. The law presumes every one innocent until proven guilty, and it is your duty in examining the conduct of the defendant in these transactions to give him the benefit of every reasonable doubt, and to construe circumstances in his favor rather than against him, if susceptible of two constructions.

The law makes you the especial judges of the weight of evidence, and the question of intent is a question of fact to be settled by you under the proofs. But while you are bound to give the defendant the benefit of every reasonable doubt, it must be a reasonable doubt, a doubt engendered by the insufficiency of the evidence for the prosecution to establish in your minds a belief of guilt. In other words you must deem it unreasonable to believe him guilty under all the proofs in the case. If, then, the evidence satisfies you that the defendant obtained any portion of these goods on credit, under the false pretense of carrying on business, when in truth he was not at the time carrying on business in due course of trade. but was then secretly shipping and selling them at a sacrifice at less than cost, and that said purchase was so made with intent to defraud, you will find the defendant guilty. But if the evidence does not establish these facts of false pretense of carrying on business and intent to defraud, you will find the defendant not guilty.

And I take occasion to say that if the proof is deemed by you sufficient to establish the facts which I have told you must combine to make out the offense, I hope you will not hesitate to say so by your verdict.

The interests of the community require that offenses of this character shall, when duly proven be condignly punished, and no feeling of sympathy for the individual should prevent the due visitation of the penalties of the law upon those who are proven guilty. You owe it to every business man, to yourselves, and the community, to punish offences of this character, which if suffered to go unpunished, would destroy the confidence of all men in the efficacy and majesty of the law, and to see to it that when a case is fully made out, punishment shall follow the offense. Men should be taught that it is as dangerous to commit crime, under the guise of commercial transactions as with the false key of the burglar, or the slung-shot of the midnight marauder.

If you shall, therefore, find that the prosecution has made out their case, you will simply find the defendant guilty. It will be for the court to fix the term of imprisonment, and whether it shall be at hard labor or without it.

The defendant was found guilty [and sentenced to the late county jail for sixty days.] [2]

See U. S. v. Geary [Case No. 15,195a].